## TINCKNELL *v.* WARD.

1. SPECIFIC PERFORMANCE—ORAL AGREEMENT TESTAMENTARY IN PART.

   Oral agreement whereby son would have farm on which he, his father and their respective families lived, upon latter's death, but only as an item of son's share of father's estate, on condition that son would remain on and work the farm during the lifetime of the parents, would be unenforceable as testamentary in character, in part, in suit for specific performance since it would be a determination of distribution of father's estate *pro tanto.*

2. SAME—EVIDENCE—ORAL AGREEMENT.

   In suit for specific performance of an alleged oral contract whereby son was to remain on farm, work it, receive one-third of the proceeds during lifetime of parents and then receive it outright upon their death *held*, not established in its entirety by the evidence, testimony of witnesses which extended agreement beyond that of merely working farm on shares being necessarily subject to close scrutiny since much of it was an attempt to narrate conversations which had occurred years previously.

3. EVIDENCE—ORAL ADMISSIONS.

   Testimony of oral admissions is regarded as the least satisfactory evidence for the establishment of disputed facts.

4. DESCENT AND DISTRIBUTION—STATUTES—COURTS.

   Courts should exercise great caution in decreeing a disposition of an estate differing from that provided by statutes of descent and distribution when a person dies intestate leaving a substantial estate.

5. SPECIFIC PERFORMANCE—ORAL AGREEMENT TO WILL PROPERTY—EVIDENCE.

   Specific performance of an oral agreement to convey land by will, will not be granted except when the right to such relief is established by testimony which is clear and convincing.

6. SAME—MATTER OF GRACE—RESULT ACCOMPLISHED.

Specific performance is not a matter of right but rather a matter of grace and should not be granted where result would be inequitable in that it failed to accomplish the result contemplated by the alleged oral agreement which a litigant asks to have specifically performed.

7. SAME—EQUALITY OF DISTRIBUTION OF ESTATE OF PARENT.

Under evidence showing father contemplated equal distribution of his property by leaving 180-acre farm to son and 50-acre farm and $5,000 to daughter, son *held*, not entitled to have specific performance of oral contract to leave farm to him outright and then share equally in balance of estate on ground of inequity.

8. DESCENT AND DISTRIBUTION—ADMINISTRATOR ENTITLED TO ACCOUNTING.

Administrator of estate is one to whom heir is liable to account for personal property of the estate claimed to have been appropriated by him, not other heir.

9. ACCOUNTING—GIFTS—MORTGAGE ASSIGNED TO HEIR OF INTESTATE.

Evidence in support of cross-bill for accounting by one of two heirs of intestate *held*, to show $3,000 mortgage such heir received was a gift, hence circuit judge properly refused accounting therefor.

10. SAME—BURDEN OF PROOF—EVIDENCE.

In son's suit for specific performance of alleged oral agreement of father to leave farm to him outright in which administrator of father's estate sought an accounting by son for items of personalty omitted from inventory and cash claimed to have been withdrawn from bank and some received from sale of farm crops, livestock and other products, while son had burden of disproving administrator's claims, because of confidential relation between son and father, evidence *held*, to justify circuit judge in denying accounting where administrator filed his sworn inventory after filing cross-bill and his testimony indicated he knew of nothing son had which belonged to the father's estate.

11. COSTS—APPEAL.

No costs are awarded on appeal in suit for specific performance of a contract in which defendants sought an accounting by plaintiff where all parties appealed from decree rendered and both bill and cross-bills were dismissed on appeal.

Appeal from Macomb; Shaffer (John C.), J., presiding. Submitted April 12, 1938. (Docket No. 81, Calendar No. 40,000.)  Decided June 6, 1938.

Bill by Arthur Tincknell against Anna Ward and Robert M. Greenshields, administrator of the estate of William Tincknell, deceased, to obtain specific performance of an oral contract. Separate cross-bills by defendants against plaintiff for an accounting and other relief. From decree rendered, all parties appeal. Bill and cross-bill dismissed.

*Nunneley & Nunneley* (*Bert V. Nunneley,* of counsel), for plaintiff.

*Lungerhausen, Weeks, Lungerhausen & Neal* (*Earle M. French,* of counsel), for defendant Greenshields.

*Charles A. Retzlaff,* for defendant Ward.

NORTH, J.   On January 14, 1936, William Tincknell, a resident of Macomb county, died intestate at the age of 85.  He was survived by two children as heirs-at-law, a son, Arthur, and a daughter, Mrs. Anna Ward.  At his death William Tincknell left an estate free from debt which was appraised at nearly $43,000.  There were two farms, one of 50 acres appraised at $3,000, the other, 180 acres, appraised at $7,500.  For many years the 50-acre farm had been occupied by Mrs. Ward and her family, and the 180-acre place had been occupied jointly by deceased and his wife who died in 1928, and the son Arthur Tincknell and his family.

Arthur Tincknell filed the bill of complaint herein to obtain specific performance of an alleged oral contract with his father, claimed to have been made in

1919, by the terms of which plaintiff, on condition he remained upon the farm with his parents during the remainder of their lives and worked it for one-third of the proceeds, was to have this 180 acres as his property. Plaintiff's sister and Dr. Robert M. Greenshields, administrator of the William Tincknell estate, were made defendants. Each answered denying plaintiff was entitled to the relief sought; and each also filed a cross-bill by which an accounting from plaintiff was sought for certain items of property alleged to belong to the estate. Testimony was taken at length. The decree entered by the circuit judge did not grant in full the relief sought by any of the parties. Instead his decree provided:

"It is ordered, adjudged and decreed, * * * that the said agreement (between plaintiff and his father) be specifically performed and that the said defendants and each of them do forthwith make, execute and deliver to said plaintiff good and sufficient deeds of conveyance of said lands and premises covered by the agreement hereinbefore set forth, (describing the 180-acre farm). * * *

"It is further ordered, adjudged and decreed, that the value of said lands and premises above described be charged by the defendant, Robert M. Greenshields, as administrator of the estate of William Tincknell, deceased, against plaintiff's share in the estate of William Tincknell, deceased."

The accounting sought by defendants was denied. From the decree entered all parties have appealed.

The basis of plaintiff's appeal is his claim that the testimony establishes the oral contract of which he seeks specific performance and that since this contract was to the effect that his father would leave him the 180-acre farm by his will, the circuit judge was in error in decreeing that plaintiff should have

the farm but that its fair value should be deducted from what otherwise would have been plaintiff's share of his father's estate. Instead of finding that the testimony established the contract which plaintiff sought to have specifically performed, the circuit judge determined that the testimony disclosed a contract of very different terms. In effect the contract found by the circuit judge was that in event plaintiff continued to live upon and work the 180-acre farm during the lifetime of his parents the farm was to be left to the son but only as one of the items of the son's share of the father's estate. Clearly such an attempted oral contract would be unenforceable since of necessity it is in part testamentary in character. This difficulty was evidently sensed by counsel at the time of settling the decree, incident to which there was a long colloquy between the court and counsel as to whether or not the finding of the court and the contemplated decree did not of necessity involve further exercise of jurisdiction by the probate court. Obviously this difficulty arose from the fact that the oral agreement found by the circuit judge was in part testamentary. If specifically performed such an agreement would determine distribution of the Tincknell estate *pro tanto*. Being testamentary in part, the oral agreement found by the circuit judge is unenforceable as a matter of law.

But plaintiff asserts that the oral agreement set forth in his bill of complaint was established by the testimony, that it should be specifically performed, and the circuit judge's failure so to find was error. The allegation in the bill of complaint is that the father, in addition to giving plaintiff one-third of the proceeds of the farm during the lifetime of the parents or either of them, "would also leave to plaintiff the real estate described in paragraph one hereof

(the 180-acre farm) by his will.'' It is plaintiff's claim that about the same time the oral agreement was entered into between him and his father in 1919 the latter made a will which in its terms conformed to the oral agreement. The will has not been located since the death of William Tincknell, nor is there any testimony in the record disclosing what disposition may have been made of the will. Because of its bearing upon plaintiff's alleged contract, testimony of the two subscribing witnesses to the will was taken. There is a rather marked conflict in the testimony of these witnesses. One of the witnesses, Mr. Ford Stuart, testified as follows:

"I believe I remember the provisions of the will, fundamentally. As I remember, the farm on which Mrs. Ward now lives was left to her and $5,000 in money; and the farm on which Mr. Tincknell lived at that time and the balance of the personal property was to go to Mrs. (William) Tincknell during her lifetime, and then to Arthur after her death. * * * I saw Mr. (William) Tincknell often since 18 years ago. I cannot say exactly when I saw him last, just a few days before his death perhaps. * * * Since the making of that will 18 years ago, I have had no conversation with Mr. Tincknell, Sr., that gave me the impression that Arthur was to get the farm.''

The other witness to the will, Mr. Will Sutherland, gave the following testimony concerning the terms of the will:

"As I remember it, the farm where Mr. Tincknell lived was to be left to Arthur Tincknell, and the farm in Ray township was to go to his daughter, Mrs. Ward. The personal property was to be divided equally between Arthur and Mrs. William Tincknell. * * * I don't remember any provision in the will that the personal property was all to go to Arthur,

or that this farm was to go to Mrs. William Tincknell during her lifetime. My recollection of the will is, Mrs. Tincknell was to get one-half of the personal property, Arthur Tincknell was to get the farm that they lived on, and Mrs. Ward was to get the farm in Ray township.''

Obviously the above testimony does not very effectively support plaintiff's contention that he should not only receive the 180-acre farm but that he should share equally in the balance of his father's estate. Instead the testimony of the first of these witnesses is indicative of a desire on the part of the father to make something like an equal division of the farm properties between plaintiff and his sister, and to accomplish his purpose he provided for a payment of $5,000 to her in consequence of her receiving the smaller and less valuable farm.

But, in addition to the foregoing, numerous witnesses were produced by plaintiff who testified to statements made by plaintiff's father in regard to the disposition he either had made or desired to make of his property. Some of this testimony clearly was indicative of a testamentary intention or disposition only, but some of the witnesses testified that the father spoke of an *agreement* between him and his son. In the instant case this testimony as to an agreement is of necessity subject to close scrutiny because beyond question there was an agreement between plaintiff and his father that plaintiff should work the farm and receive one-third of the proceeds. The testimony which definitely extends the scope of the agreement beyond this is decidedly limited and much of it must be weighed in the light of the fact that the witnesses were attempting to narrate conversations which had occurred years previously. And plaintiff's present claim is, to say the least,

quite inconsistent with his conduct subsequent to his father's death in entering into a lease with the administrator for the 180-acre farm for a period of one year from April 1, 1936, at an annual rental of $450. A careful review of all of the testimony offered in support of plaintiff's claim for relief fails to establish the contractual relation which plaintiff asserts.

"Testimony of oral admissions has always been regarded as the least satisfactory evidence for the establishment of disputed facts." *Boam* v. *Greenman,* 147 Mich. 106.

When, as in the instant case, a person possessed of substantial property dies intestate, courts should exercise great caution in decreeing a disposition of such estate differing from that provided by the statutes of descent and distribution. We have repeatedly held that in cases of this character specific performance will not be granted except when the right to such relief is established by testimony which is clear and convincing. *Van Houten* v. *Vorce,* 259 Mich. 545; *Sieg* v. *Sendelbach,* 256 Mich. 456; *Groening* v. *McCambridge,* 282 Mich. 135. As indicated above we do not find in this record justification for granting specific performance sought by plaintiff.

Decision herein might well be placed upon the following basis. Specific performance is not a matter of right but rather a matter of grace. *Snider* v. *Schaffer,* 276 Mich. 92; *Moyer* v. *Hafner,* 272 Mich. 52. Certainly specific performance should not be granted where the result would be inequitable in that it failed to accomplish the result contemplated by the alleged oral agreement which a litigant asks to have specifically performed. In the instant case the only fair inference from the record is, as in effect found

by the circuit judge, that Mr. William Tincknell, incident to the alleged oral agreement with plaintiff, contemplated making a disposition of his estate by will such as would approximate in the disposition of the two farms above mentioned substantially equal generosity between his son Arthur and his daughter Mrs. Ward. To accomplish this he contemplated leaving the 50-acre farm to the daughter and the 180-acre farm to the son, but with a bequest of $5,000 to the daughter which would somewhere nearly accomplish equality of distribution in this portion of the estate. But plaintiff now asks the court in equity specifically to perform a part of this plan; and the result of granting such relief would be to give the son the valuable 180-acre farm and in addition enable him to take by inheritance a one-half interest in the balance of the estate. In view of the facts disclosed by this record it would be obviously unjust and inequitable to grant the specific performance prayed; and on that ground alone it might well be denied.

As above stated, the defendants have appealed from that portion of the decree entered in the circuit court denying them relief by way of an accounting for personal property which defendants claim belongs to the estate but has been appropriated by plaintiff. If there was to be an accounting, obviously it should be to the administrator of the estate, not to Mrs. Ward as an heir. Apparently for this reason cross-appellants have confined their brief to the contention that the administrator, Robert M. Greenshields, was entitled to an accounting as prayed in his cross-bill.

One of the items for which an accounting is sought is the so-called Whiting real estate mortgage for upwards of $3,000. The testimony convincingly

shows that William Tincknell in his lifetime gave and assigned this mortgage to plaintiff. The assignment was made in December, 1932, over three years prior to the death of William Tincknell. The assignment was duly recorded. We are satisfied from the testimony of disinterested witnesses that at the time this assignment was made the father intended to and did give the Whiting mortgage to his son. The circuit judge was correct in so holding and in refusing an accounting for this item.

The balance of the claim for an accounting arises from defendants' contention that certain chattels on the home farm were omitted from the inventory of the estate on the understanding or belief that they belonged to the plaintiff, and defendants also assert plaintiff appropriated money belonging to his father, some of which it is claimed plaintiff withdrew from bank deposits and some of which it is claimed was received by plaintiff from the sale of farm crops, livestock and other products of the home farm. Assuming, as defendants contend, that because of the confidential relation of plaintiff and his father the burden was on plaintiff to disprove defendants' claims, still it must be held that the circuit judge was right in denying the affirmative relief by way of accounting sought by defendants.

As bearing upon this phase of the case it may be noted that notwithstanding the tangible property for which an accounting is now sought was not included as a part of the William Tincknell estate, no action was taken in the probate court to correct the inventory or otherwise to have this property included in the assets of the estate. The defendant administrator had filed his sworn inventory in the probate court months before he filed his cross-bill herein. Even after this suit was started the admin-

istrator in the first instance seems to have been content with merely filing an answer to the bill of complaint and denying plaintiff was entitled to the relief sought; and it was not until later upon a petition to the court to be allowed to amend his answer that the administrator filed a cross-bill wherein this affirmative relief in the nature of an accounting was prayed. At the trial of the case the administrator was sworn as a witness and he testified:

"I do not know of anything that Arthur Tincknell has that belongs to the estate now. He is not indebted to the estate but there have been disputed things. To the best of my knowledge there wasn't any debt existing against Arthur Tincknell at the time his father died; not that I learned about."

In view of the above and other facts disclosed by the record, the decree in the circuit court in so far as it denied an accounting must be affirmed.

A decree may be taken in this court dismissing plaintiff's bill of complaint and defendants' cross-bills. No costs will be awarded on this appeal.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.