SHEARDY v. BAKER.

1. EQUITY—DECREE FOR DEFENDANT—ABSENCE OF CROSS BILL—DIS-
MISSAL OF BILL.
    In the absence of any cross bill by the defendant, seeking af-
    firmative relief, a decree for defendant should be limited to
    a dismissal of the bill of complaint.

2. SPECIFIC PERFORMANCE—CONTRACT TO LEAVE PROPERTY BY WILL—
THIRD-PARTY    BENEFICIARY    CONTRACT    STATUTE—BURDEN    OF
PROOF.
    In suit for specific performance of alleged contract of testator's
    housekeeper that she would leave to plaintiffs, the testator's
    presumptive heirs-at-law, the balance of the property which
    testator left her, plaintiffs had burden of showing such agree-
    ment in order that third-party beneficiary statute might apply
    and that decree of specific performance be entered (Act No.
    296, Pub. Acts 1937).

3. SAME—CONTRACT TO LEAVE PROPERTY BY WILL—EVIDENCE.
    Before specific performance of an alleged contract to leave
    property by will or otherwise may be decreed, a contract
    must be shown, for regardless of the equities in a case, the
    court cannot make a contract for the parties when none
    exists.

4. SAME—BURDEN OF PROOF.
    One seeking specific performance of a contract to leave prop-
    erty by will has the burden of proving the contract.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am. Jur., Equity, § 326.
[2] 57 Am. Jur., Wills, §§ 694, 695, 721, 725.
[2] Joint, mutual, and reciprocal wills. 169 A.L.R. 9.
[3, 4, 7] 57 Am. Jur., Wills, § 169.
[3-8] Remedies for breach of decedent's agreement to devise, be-
    queath, or leave property as compensation for services.    69
    A.L.R. 14.
[5, 8] 57 Am. Jur., Wills, §§ 186, 734.
[6, 8] 57 Am. Jur., Wills, §§ 185, 186.
[7] 12 Am. Jur., Contracts, § 19; 57 Am. Jur., Wills, § 169.

5. EVIDENCE—ORAL TESTIMONY OF DECLARATIONS OF A DECEASED PERSON—CONTRACT TO LEAVE PROPERTY BY WILL.

Oral declarations of deceased that he was going to leave his property to plaintiff in suit for specific performance of alleged contract to leave him the property by will or otherwise are closely scrutinized as such testimony is the least satisfactory evidence for the establishment of disputed facts.

6. SPECIFIC PERFORMANCE—ORAL CONTRACTS—WILLS—CLOSE SCRU-TINY OF EVIDENCE.

While the required proof in a suit for specific performance of an alleged oral agreement to leave property by will is the same as in civil cases generally, the nature of the litigation is such as to require courts to scrutinize the testimony closely and to weigh it and test it in the light of all circumstances disclosed by the record since estates of deceased persons should not be diverted in consequence of such agreements except upon proof which satisfies the mind and conscience of the court that the contract was made as claimed.

7. SAME—ORAL AGREEMENT TO CONVEY PROPERTY BY WILL—EVI-DENCE.

To warrant a decree specifically enforcing an oral contract to convey property by will there must be something more than a mere unexecuted intention to make a will, there must be a contract, a meeting of the minds, clearly proven.

8. SAME—ORAL CONTRACT TO CONVEY PROPERTY BY WILL—TESTI-MONY VIEWED WITH CAUTION.

Testimony concerning oral agreement to leave property by will must be viewed with great caution because of frailties of memory, improbability of repeating precise language of deceased and expressing full state of mind of such person, and greater weight is given to the acts of alleged contracting parties.

9. SAME—ORAL AGREEMENT TO LEAVE PROPERTY BY WILL—EVIDENCE —CHANGE OF INTENTION.

In suit by heirs-at-law of testator against executrix of the estate of his housekeeper for specific performance of alleged oral agreement with testator to leave balance of property from his estate to plaintiffs, notwithstanding establishment of existence of alleged agreement up until testator made a new will, where evidence shows that new will left all of his property to the housekeeper absolutely, there was not the requisite degree of certainty of the existence of a bilateral

agreement to the effect asserted by plaintiffs yet existing at time the new will was executed.

10. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-
CEASED—SPECIFIC PERFORMANCE—CONTRACT TO LEAVE PROPERTY BY
WILL.

In suit by heirs-at-law of testator against executrix of estate of his housekeeper for specific performance of alleged agreement of housekeeper to leave balance of property to plaintiffs that testator should devise to her, testimony of plaintiffs themselves of statements made by testator as to matters equally within the knowledge of deceased housekeeper was properly excluded under pertinent statute (3 Comp. Laws 1929, § 14219).

11. SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY BY
WILL—EVIDENCE—CHANGE OF INTENTION.

In suit by heirs-at-law of testator against executrix of estate of his housekeeper for specific performance of alleged agreement of housekeeper to leave balance of property to plaintiffs that testator should devise to her, record *held*, to justify finding of trial court that proofs failed to establish contract on which plaintiffs must rely in view of evidence leaving open the possibility of a change of intention ŏn part of housekeeper without a violation of any express contract.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted October 7, 1948. (Docket No. 60, Calendar No. 44,122.) Decided December 17, 1948.

Bill by Lulu J. Sheardy and another against Etta Baker, executrix of the estate of Furnia Lisle Mc-Manamon, deceased, for specific performance of contract to devise property. Decree for defendant. Plaintiffs appeal. Affirmed.

*John Brattin,* for plaintiffs.

*C. LaVerne Roberts,* for defendant.

BOYLES, J. This is a bill in chancery to compel specific performance of a claimed contract to devise certain premises to the plaintiffs. They are rela-

tives and presumptive heirs-at-law of one Rollo Sperger, a single man, who died testate at the age of 71 or 72 years, possessed of two houses and a vacant lot and some personal property. He left a will which has been duly admitted to probate without objection, devising and bequeathing all of his property, both real and personal, to one Furnia Lisle McManamon. She was also past 70 years of age, his housekeeper and constant companion of many years. Plaintiffs herein, while not contesting his will, claim that there was an agreement between Sperger and Furnia McManamon whereby she agreed that such of his property as she still had at the time of her death would be left to these plaintiffs. Their claim, on which they base their present bill in chancery, is set out in their brief as follows:

"Plaintiffs contend that shortly before or contemporaneously with the execution of his will of September 5, 1945, Rollo Sperger entered into an agreement or contract with Furnia McManamon whereby in consideration of his willing all his property to her without reservation, she agreed to will such of his property as remained at the time of her death to plaintiffs, the South street house and the vacant lot on Lincoln avenue to Dell Kennedy and the Lincoln avenue house with its furnishings to Lulu Sheardy. * * * The trial court correctly states the sole question as being whether or not a contract was entered into between Rollo Sperger and Furnia Lisle McManamon as claimed by the plaintiffs."

Furnia Lisle McManamon died testate in 1947, still the owner of the real estate here in question. However, instead of devising it to these plaintiffs, she left a will devising said property to one Etta Baker, the defendant herein. Her will was duly admitted to probate without objection, and the appointment of Etta Baker as executrix was duly confirmed by the probate court. Plaintiffs, relying on the claimed

agreement between Rollo Sperger and Furnia L. McManamon that they were to have the real estate in question, demanded that Etta Baker deed it to them, and upon her refusal filed the instant bill of complaint to compel specific performance of such claimed agreement. They further asked that they be decreed to be the owners of the real property in question.

Issue having been joined, the trial court after taking testimony entered a decree dismissing the bill of complaint and also adjudging that the title to the real property described in the bill of complaint was vested in the estate of Furnia L. McManamon, deceased; and that a certified copy of the decree might be recorded in the office of the register of deeds for the purpose of showing such title. In the absence of any cross bill by the defendant, seeking affirmative relief, the decree should have been limited to a dismissal of the bill of complaint. However, the plaintiffs and appellants do not seek reversal or modification of the decree on that ground. Although appellants have made no express claim that they are entitled to any relief specifically based upon the so-called third-party beneficiary statute, Act No. 296, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 14063-1 *et seq.*, Stat. Ann. 1947 Cum. Supp. § 26.1231 *et seq.*), on the record before us and for the reasons hereinafter stated they are not benefited by the statute.

Plaintiffs do not claim, nor is there any proof to support such a claim, that Furnia Lisle McManamon ever agreed to *convey* the property in question to plaintiffs or either of them. Instead, plaintiffs claim that Furnia L. McManamon agreed with Rollo Sperger that she would leave said property to the plaintiffs, by a will, if she still owned it at the time of her death. Their bill of complaint alleges:

"That on or shortly before the 5th day of September, 1945, the said Rollo Sperger and the said Furnia Lisle McManamon entered into an agreement whereby he agreed to will all properties of which he was possessed at his death to her and she agreed to will such of said properties as she had not disposed of during her lifetime as follows: The house and all its contents on lots 245 and 246 of the plat of South Gardens No. 2, city of Lansing, to plaintiff Lulu J. Sheardy, and lot 118 of Addmore Park addition, Lansing, and entire block 208, to plaintiff Dell Kennedy. * * * That on many occasions thereafter the said Furnia Lisle McManamon exhibited her wish, intention, and desire to make a testamentary disposition of the properties so inherited from Rollo Sperger as she had theretofore agreed, but that as plaintiffs are informed and believe, she never in fact executed such will as agreed, but on, to-wit, the 4th day of January, 1947, executed a will devising and bequeathing such properties to the said Etta Baker."

Rollo Sperger died of cancer December 26, 1945. He had been quite ill for many months, and during April, 1945, he went to the Mayo clinic at Rochester, Minnesota, for treatment. At that time he expressed a fear that he would not get home alive and on April 15, 1945, on his return home, he made a will, the contents of which are not disclosed by the record. On September 5, 1945, he executed a later will, the one admitted to probate without objection, reciting in paragraph 2 as follows:

"Since the making of my will of April 15, 1945, certain circumstances have arisen which impel me to change the object of my bounty, and I therefore hereby give, devise, and bequeath all of my property, both real and personal and/or mixed, of whatsoever nature and wheresoever situated, to my faithful friend Furnia Lisle McManamon, to have and to hold to herself, her heirs and assigns forever."

The precise question before us is a question of fact. Does the testimony establish, with the requisite degree of certainty, that on or before September 5, 1945, Furnia L. McManamon agreed with Rollo Sperger that if he would leave her his property by will (as he did, in the above will), she would leave by will such of it as was left at her death to the plaintiffs or either of them? The burden rests on the plaintiffs to establish such an agreement, by convincing proofs. This Court has announced the rules governing such testimony as follows:

"Before specific performance of an alleged contract to leave property by will or otherwise may be decreed, a contract must be shown, for regardless of the equities in a case, the court cannot make a contract for the parties when none exists.

"One seeking specific performance of a contract to leave property by will has the burden of proving the contract.

"Oral declarations of deceased that he was going to leave his property to plaintiff in suit for specific performance of alleged contract to leave him the property by will or otherwise are closely scrutinized as such testimony is the least satisfactory evidence for the establishment of disputed facts." *In re Cramer's Estate* (syllabi), 296 Mich. 44.

"While the required measure of proof is the same in cases of this type as in civil cases generally, none the less the nature of the litigation is such that it behooves courts to scrutinize the testimony closely in cases of this character and to weigh it and test it in the light of all the circumstances disclosed by the record. Estates of deceased persons should not be diverted in consequence of such agreements except upon proof which 'must be such as satisfied the mind and conscience of the court that the contract was made as claimed.' *Hiles* v. *First National Bank at Flint,* 237 Mich. 278; *Sieg* v. *Sendelbach,* 256 Mich. 456." *Schulz* v. *Steffey,* 275 Mich. 409.

"To warrant a decree specifically enforcing an oral contract to convey property by will there must be something more than a mere unexecuted intention to make a will. There must be a contract, a meeting of minds, clearly proven. *King* v. *Luyckx,* 280 Mich. 117; *Van Houten* v. *Vorce,* 259 Mich. 545; *In re Cramer's Estate,* 296 Mich. 44. The burden was on plaintiff to prove the contract alleged in order to have specific performance decree. *Drolshagen* v. *Drolshagen,* 230 Mich. 444; *Sieg* v. *Sendelbach,* 256 Mich. 456; *In re Cramer's Estate, supra.* In cases of this sort the court will view the testimony of the witnesses with great caution and will scrutinize it closely. As we said in *King* v. *Luyckx, supra:*

" 'Our observations in *Paris* v. *Scott,* 267 Mich. 400, are applicable to the situation presented by this appeal. We said in that case at page 403:

" ' "In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken lest the court, out of consideration of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said." ' " *Kerns* v. *Kerns,* 303 Mich. 23, 29.

Plaintiffs' testimony amply establishes that they might properly have been considered as proper beneficiaries through preferment by Rollo Sperger. He frequently stated that plaintiffs would be taken care of, that Furnia knew what she was supposed to do. Much of this testimony refers to statements made prior to September 5, 1945, but at that time he plainly announced a change of intention when he

executed the will which was admitted to probate without objection, stating therein "Since the making of my will of April 15, 1945, certain circumstances have arisen which impel me to change the object of my bounty." It is a fair inference that in his will of April 15, 1945, he made some provision for the plaintiffs; otherwise it would not have been a change in the object of his bounty to leave his property absolutely and in its entirety to Furnia L. McManamon. Plaintiffs claim that this change of intention was due to a mistaken belief, or perhaps a delusion, that one of the plaintiffs was making some improper inquiry into his personal affairs. Possibly that claim might more properly have been made by contesting the admission of his will to probate. Whether mistaken or otherwise, the fact remains his will made on September 5, 1945, was admitted to probate without objection, whereby he left his property absolutely, to Furnia L. McManamon. It appears quite probable, from the record before us, that at some time prior to September 5, 1945, there was a wish, a desire, and an intention expressed by Rollo Sperger to Furnia L. McManamon that at her death she should leave to these plaintiffs whatever property she received from Rollo Sperger which she still had at the time of her death. However, this does not establish with the requisite degree of certainty the existence of a bilateral agreement to that effect, or that any such an agreement still existed when he executed his last will on September 5, 1945.

Some attempt was made by the plaintiffs themselves to testify as to statements made by Rollo Sperger, and to matters equally within the knowledge of Furnia L. McManamon. The testimony was properly excluded. *In re Cramer's Estate, supra;* 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914). Other witnesses testified as to statements made by Rollo Sperger and Furnia L. McManamon, but none

testified directly that either had said they had made an agreement. At most, such statements indicated an intention, or a desire. A recital of such testimony is not necessary. An examination of the entire record is convincing that plaintiffs' proofs fall short of establishing with the requisite degree of certainty that Furnia L. McManamon agreed that if Rollo Sperger would leave his property to her she would make a will giving what was left of it to the plaintiffs herein. At most, the record shows a wish, a desire, or a request, that such might be done. It leaves open the possibility of a change of intention without a violation of any express contract or agreement. The trial court, after seeing and hearing the witnesses, concluded that the proofs did not establish the contract on which plaintiffs must rely. On the record before us, we cannot say we would have reached the opposite conclusion.

Affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.