Estate of Stanley T. Sochalski, Marie Sochalski, Executrix v. Commissioner.
Estate of Sochalski v. Commissioner
Docket No. 45299.
United States Tax Court
T.C. Memo 1955-19; 1955 Tax Ct. Memo LEXIS 318; 14 T.C.M. (CCH) 72; T.C.M. (RIA) 55019; January 28, 1955
Anthony L. Lutomski, Esq., 2316 Guardian Building, Detroit, Mich., for the petitioner. Peter K. Nevitt, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $4,476.82 in estate tax and a 25 per cent addition to tax for failure to file a timely return. The issues are (1) the fair market value of certain properties owned by decedent at the time of his death, (2) whether payment of decedent's unpaid *319 pledge to a charity entitles his estate to a deduction in determining the value of the net estate, and (3) whether petitioner's failure to file a timely return was due to a reasonable cause. Findings of Fact The stipulated facts are found accordingly. On October 8, 1947, petitioner was duly appointed and qualified as the executrix of the estate of her husband, Stanley T. Sochalski, who died October 5, 1947. The estate tax return involved herein was filed with the collector of internal revenue at Detroit, Michigan, on November 21, 1949. The decedent's son, Stanley M. Sochalski, returned from active service in the armed forces in December 1945 and thereafter assumed the active management of his father's concrete block manufacturing business. In this capacity the son did all of the buying and selling, arranging of credit for the business, and the over-all supervision of the business. The bookkeeping records and income tax returns were prepared by an accountant from data supplied by the son. After December 1945 neither petitioner nor the decedent was active in the management of the business but left such role to their son. Following the death of the decedent, petitioner and her *320 son engaged an attorney to work with their accountant in the preparation of the estate tax return. Reported on the return as forming part of decedent's estate were a house, factory, and a vacant lot located in or near Detroit, and a summer home in Anchor Bay, all in Michigan. The fair market values assigned by petitioner to these properties as of the date of decedent's death, October 5, 1947, were as follows: Factory
$44,430
House
5,660
Vacant lot
1,400
Summer home
2,725 These values were identical to the assessed valuations of the real estate at the time of decedent's death, as shown by the records of the city or county assessor's office for the area in which the particular property was located. In determining his deficiency respondent increased the reported values. At the trial the respondent conceded that the fair market values of the respective properties as of the date of decedent's death were less than originally determined. The respective valuations appear below: Original
Value
determination
conceded
Factory
$50,000
$50,000
House
12,500
10,000
Vacant lot
2,000
1,650
Summer home
5,000
5,000
On or about January 20, 1947, petitioner's *321 decedent signed the following instrument: "Pledge "To the Order of the Felician Sisters and Children entrusted in the Sisters' care, I will erect an Altar to be used in the Chapel in the Summer Camp for Children at Holly, Michigan. Toward this I contribute an amount of $1,000.00." There is no evidence of record that decedent received any consideration for the signing of this instrument other than that he did so upon a visit of the Felician Sisters to his home during his period of convalesence. During his lifetime decedent did not pay any money to the Order of the Felician Sisters nor did he make any provision therefor in his will. On February 3, 1948, the Order of the Felician Sisters filed a proof of claim against the decedent's estate with the probate court for the County of Wayne, State of Michigan, for the $1,000 against the estate which petitioner, acting as decedent's executrix, did not contest and which was paid by the estate. The fair market values of the properties in question as of the date of decedent's death were as follows: Factory
$50,000
House
10,000
Vacant lot
1,650
Summer home
5,000
Petitioner has failed to establish that the claim *322 of $1,000 was an enforceable legal obligation of the estate. Petitioner has not shown that the failure to file a timely estate tax return was due to reasonable cause and not to wilful neglect. Opinion LEMIRE, Judge: The first question presented involves a determination of the fair market values of the factory, house, vacant lot, and summer home owned by decedent on the date of his death on October 5, 1947. We have set forth in our findings of fact, supra, the values reported by petitioner and those determined by respondent. In support of her contention that the correct values were those reported on the return petitioner relies on the fact that such values were given to her by her son who actively managed the decedent's business and who consulted with the attorney and tax accountant who assisted in preparing the return, and that in the estimation of these three people the best figures available were those contained on the records in the city and county assessors' office in which the respective properties were located. Such assessment records, however, standing alone, are not sufficient *323 proof of the fair market values in the absence of proof of the ratio of the assessed values to the actual values. Tabor Mfg. Co. v. Commissioner, 34 Fed. (2d) 140; William A. Daly, Administrator, 1 B.T.A. 993. The record here is devoid of any evidence establishing that the assessed values of the properties represented 100 per cent of their fair market values at the time of decedent's death. To establish the conceded fair market values, respondent relied upon the expert testimony of a witness who had been actively engaged for 35 years in appraising real estate values in and around the Detroit area. His opinions were based upon a personal inspection of all of the properties, except that of the summer cottage located some distance from Detroit, and upon a consideration of the construction of the buildings, the facilities therein, the age, location, and zoning of the property, and selling prices of comparable real estate located in the same area at the time of decedent's death. This witness testified that in his opinion the ratio of assessed valuation of real estate to actual values in the Detroit area was approximately 60 to 80 per cent in the case of factories *324 and approximately 33 to 40 per cent in the case of residential houses. Accordingly, we have found as an ultimate fact that the fair market values of the properties in question as of the date of decedent's death were as follows: Factory
$50,000
House
10,000
Vacant lot
1,650
Summer home
5,000
The second question presented is whether payment of decedent's unpaid pledge to a charity entitles his estate to a deduction in determining the value of the net estate. In reporting decedent's estate tax petitioner claimed a deduction of $1,000, which amount was paid by the estate upon an uncontested claim filed against it by the charity in question. No provision was made for such a gift in the decedent's last will and testament. Respondent determined that this amount was includible in decedent's net estate because the claim was not enforceable against either the decedent or his estate. Section 812(b)(3), Internal Revenue Code of 1939, as amended by section 406 of the Revenue Act of 1942, provides that charitable pledges enforceable under local laws are to be treated as bequests *325 and may be deducted in determining the net value of a decedent's estate. The test of enforceability, therefore, is a question of local law. It is well established that in Michigan, as elsewhere, a promise to make a gift unsupported by consideration is unenforceable. Bell v. Cramer's Estate, 296 Mich. 44, 295 N.W. 553; Nix v. Jensen, 282 Mich. 195, 275 N.W. 817. On this point petitioner has submitted no evidence to show that decedent received any consideration in return for his pledge or that his promise was in any way enforceable against him. The fact that the probate court allowed the claim of the charity in question is not controlling here inasmuch as petitioner, as executrix of decedent's estate, did not contest the claim. The First-Mechanics Nat. Bank of Trenton, Executor, 40 B.T.A. 876, affd. 117 Fed. (2d) 127. Accordingly, we hold that the respondent properly disallowed the claimed deduction of $1,000 in determining the decedent's net estate for federal estate tax purposes. The third question presented is whether petitioner's failure to file a timely return was due to a reasonable cause. Since decedent's death occurred *326 on October 5, 1947, the estate tax return for his estate was due 15 months from that date, or January 5, 1949. Sec. 821, I.R.C. (1939). The record shows that the return for decedent's estate was not filed until November 21, 1949, or approximately 10 1/2 months after the due date. No extension of time to file a return was requested. Respondent thereupon asserted the mandatory addition to tax of 25 per cent of the tax for such failure to file a timely estate tax return. Sec. 3612, I.R.C. (1939). Petitioner contends that the delinquency in filing the return in question was due to reasonable cause and not wilful neglect. She claimed that she was not aware of any time limit and relied completely upon her accountant and attorney. Both contentions here are without merit. Neither petitioner, nor her accountant, nor her attorney testified at the hearing, and the record fails to indicate any reason for their failure to do so. It is well settled that ignorance of the plain and unambiguous provisions of the statutes and regulations prescribing the time for filing returns cannot be considered reasonable *327 cause. Cronin's Estate v. Commissioner, 164 Fed. (2d) 561, affirming on this issue 7 T.C. 1403. With respect to petitioner's position that the delay resulted from reliance upon her advisors, the record does not show that petitioner ever supplied to her attorney and her accountant the information necessary to prepare the return prior to its due date. Consequently, the petitioner has not established that any delay in filing was entirely a matter of her reliance upon others. See Estate of Abraham Werbelovsky, 9 T.C. 689; C. R. Lindback Foundation, 150 Fed. (2d) 986, affirming 4 T.C. 652, 667. Nor does the record show that petitioner's advisors were competent tax advisors. Cronin's Estate v. Commissioner, supra. On this issue we hold that petitioner has failed to show reasonable cause for the delay in filing and to show that such delay was not the result of wilful neglect. We, therefore, sustain respondent's 25 per cent addition to the estate tax as mandatory under the statute. Decision will be entered under Rule 50.