# STATE OF MICHIGAN

# COURT OF APPEALS

GLORIA KATO KARUNGI,

        Plaintiff/Counter-Defendant-
        Appellant,

v

RONALD LEE EJALU,

        Defendant/Counter-Plaintiff-
        Appellee.

UNPUBLISHED
September 26, 2017

No. 337152
Oakland Circuit Court
Family Division
LC No. 2016-841198-DS

Before: O'BRIEN, P.J., and JANSEN and MURRAY, JJ.

JANSEN, J. (*dissenting*)

For the reasons that follow, I respectfully dissent.

The majority's decision rests in large part on the assumption that an agreement plaintiff and defendant entered with the IVF clinic will dictate the outcome of these proceedings. Indeed, without explaining its reasoning or citing any authority, the majority states that "the parties entered into a contract that governed the parties' interest in the contested embryos" as though it were an undisputed fact. I disagree.

Although both plaintiff and defendant signed an agreement with the clinic, the agreement was clearly entered between each individual party and the IVF clinic. By its plain language, the agreement does not bind the parties to a particular disposition of the frozen embryos or to settlement via arbitration. None of the terms indicate that plaintiff and defendant reached an agreement with one another regarding the disposition of the frozen embryos upon their separation. Although the parties here were never married, the divorce provision of the contract is illustrative. It provides: "If at any time the partners divorce, a copy of the final divorce decree must be provided and the embryos will be handled in the manner set forth in the divorce decree." This provision expressly reserves the issue of the embryos' disposition, in the event of separation, for determination by the parties. Under the agreement, the IVF clinic simply agrees to carry out the parties' agreed-upon disposition once a decision has been made.

The majority correctly observes that an unambiguous contract must be enforced according to its terms, before it makes the mistake of reading language into the IVF agreement that simply does not exist. The majority states that "the parties clearly intended for the embryos

-1-

to be 'joint property' and for any dispute *regarding the embryos* to be 'settled by arbitration.' " (Emphasis added.) To the contrary, by the plain language of the agreement, the parties agreed *only* that "any and all disputes *relating to this agreement or its breach* shall be settled by arbitration." (Emphasis added.) Nothing in the agreement requires the parties to settle any and all disputes *regarding the embryos* in arbitration. Regardless of the equities of this case, and the majority's hesitation to decide matters related to the disposition of frozen embryos, "the court[] cannot make a contract for the parties when none exists." *Hammel v Foor*, 359 Mich 392, 401; 102 NW2d 196 (1960). Plaintiff's cause of action is not a dispute relating to the IVF agreement or its breach, and the arbitration clause does not apply.

I am troubled by the majority's decision to look beyond the issues raised by the parties and argue plaintiffs' case on her behalf. Neither party raised the issue of contract enforceability in the lower court or on appeal. Plaintiff's request in the lower court was for a declaration of whether the frozen embryos were subject to a custody determination. On appeal, she argues that because the frozen embryos are "persons," the trial court has the legal authority to consider their disposition and reach a custody determination. Defendant, in response, argues that the courts lack jurisdiction to determine custody of the frozen embryos because there is no authority for the proposition that frozen embryos are persons under the law. I do not believe this Court requires additional factfinding by the lower court to enable it to address the legal questions raised by the parties, and I am puzzled by the majority's request for particular facts relating to contractual issues neither party has claimed to exist. Assuming arguendo that the IVF agreement controls the determination of any of the issues presented by the parties, there is no indication, as the majority suggests, that either party waived the arbitration provision or "acted in a way that may have impliedly altered the contract." I would not alter the entire procedural posture, sua sponte, to remand the matter and allow the parties to re-litigate theories they failed to properly raise.

Instead, I would affirm the decision of the trial court to dismiss plaintiff's motion for a custody determination for lack of authority to consider the issue of custody of the frozen embryos. I agree with the majority's conclusion that the trial court's focus on case designation was in error. It is the substance of plaintiff's motion that controls, *Jahnke v Allen*, 308 Mich App 472, 474-475; 865 NW2d 49 (2014), and plaintiff's motion requested a declaration that the frozen embryos were subject to a custody determination. The trial court's grant of summary disposition to defendant for lack of authority, if based only on case designation, was in error. However, this Court affirms lower court decisions when the right result is reached for the wrong reason. *Scherer v Hellstrom*, 270 Mich App 458, 464; 716 NW2d 307 (2006). There is no Michigan law supporting the proposition that frozen embryos are persons subject to a custody determination. The trial court correctly noted that it lacked the legal authority to consider the disposition of the frozen embryos in the context of a support case. The trial court *also lacked legal authority to consider the disposition of the embryos in the context of a custody case*. Dismissal of plaintiff's motion was therefore appropriate.

/s/ Kathleen Jansen

-2-